**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MICHAEL LENOIR SMITH,** | **1:07-CV-1632 AWI GSA P** |
| **Plaintiff**, | **PRETRIAL ORDER** |
| **v.** | **Telephonic Trial Confirmation Hearing: February 22, 2010, 3:00 p.m.** |
| **Sgt. DAVIS, et al.,** | **Motions In Limine Hearing: March 23, 2010, 8:30 a.m. Courtroom 2** |
| **Defendants** | **Trial: March 23, 2010, 8:30 a.m. Courtroom 2** |

This is a civil rights action filed pursuant to 42 U.S.C. § 1983 by Plaintiff Michael Lenoir Smith, a state prisoner proceeding pro se and in forma pauperis. This action is proceeding on Plaintiff's complaint, filed November 13, 2007, against Defendants Sgt. Davis, C/O Lindquist, C/O Elizalde, C/O Nesbitt, Cook Supervisor I. Franco, C/O J. Franco, and C/O Dill for use of excessive force in violation of the Eighth Amendment and against Defendants Sgt. Davis, C/O Lindquist, and C/O Elizalde for retaliation in violation of the First Amendment.

The parties have submitted pretrial statements. Having reviewed the statements and the remainder of the file, the court now issues the Pretrial Order.

**I. Jurisdiction and Venue**

The court has subject matter jurisdiction over this federal civil rights action. 28 U.S.C. § 1331. Venue is proper because the conduct allegedly occurred in this judicial district.

**II. Jury Trial**

All parties requested trial by jury. This action shall be tried by a jury of eight.

**III. Facts**

A.  Undisputed Facts

1.  Plaintiff, Michael Smith (P-64019) is presently incarcerated by the California Department of Corrections and Rehabilitations (CDCR).

2.  At all time relevant to this action, Plaintiff was an inmate housed at Pleasant Valley State Prison (PVSP).

3.  On October 17, 2007, Plaintiff was assigned as a kitchen worker in PVSP A Facility Main Kitchen.

4.  At all time relevant to this action, Defendant Davis was employed at PVSP and was on duty at the PVSP Facility A Main Kitchen.

5.  At all time relevant to this action, Defendant Elizalde was employed at PVSP and was on duty at the PVSP Facility A Main Kitchen.

6.  At all time relevant to this action, Defendant Lindquist was employed at PVSP and was on duty at the PVSP Facility A Main Kitchen.

7.  At all time relevant to this action, Defendant Dill was employed at PVSP and was on duty at the PVSP Facility A Work Change.

8.   At all time relevant to this action, Defendant J. Franco was employed at PVSP and was on duty at the PVSP Facility A Main Kitchen.

9.  At all time relevant to this action, Defendant I. Franco was employed at PVSP and was Plaintiff's work supervisor.

10.  On October 17, 2002, while checking in inmates, Defendant Elizalde noted that

Plaintiff was wearing black sunglasses with sparkly logos.   When Plaintiff was reminded that inmates were not allowed to wear sunglasses indoors, Plaintiff removed the sunglasses.

11.     After checking in inmates, Defendant Elizalde approached Plaintiff and asked to inspect Plaintiff's sunglasses to ensure they were in compliance with prison regulations.    Defendant Lindquist observed this.

12.     Defendant Elizalde confiscated the sunglasses.

13.     Defendant Elizalde advised Plaintiff he was going to be sent back to his cell for the day.

14.     Plaintiff was restrained in handcuffs.

15.     Defendant Davis and Defendant Lindquist escorted Plaintiff to the A-Facility Work Change so that Plaintiff could check out of his job for the day.

16.     Once at work change, Defendant Lindquist returned to his post and Plaintiff was escorted from Work Change to the Program Office by Defendants Davis and J. Franco. At the Program Office, Plaintiff was placed in a holding cage and his handcuffs were removed.   Plaintiff was then issued a CDC-128 chrono documenting the incident.

B.  Defendant's Additional Undisputed Facts

1.     When Defendant Elizalde inspected the sunglasses, the sunglasses appeared to Defendant Elizalde to be female sunglasses. Therefore, Defendant Elizalde confiscated the sunglasses until Plaintiff's ownership could be confirmed.

2.     Defendant Elizalde and Defendant Lindquist then went to Defendant Davis's office to research whether Plaintiff's sunglasses were identified on Plaintiff's personal property card.

3.     Defendant Elizalde telephoned the Receiving and Release Department and determined that Plaintiff's personal property card identified a black pair of sunglasses, but did not specifically indicate "Dolce & Gabanna" sunglasses. The

Receiving and Release officer advised Plaintiff that in her personal experience, Dolce and Gabbana sunglasses would be well in excess of the prison's $50 limit on the value allowed for prisoner sunglasses.

4. Defendants Lindquist and Davis remained in the office while Defendant Elizalde returned to where Smith was working and advised Smith that the sunglasses would remain confiscated until Smith produced a receipt demonstrating that the Dolce & Gabbana sunglasses belonged to him.

C. Disputed Facts

1. Whether Defendant Davis was the custody supervisor at the time Plaintiff was assigned as a cook in the main kitchen?

2 Whether Defendant J. Franco was working overtime at the time of the incident?

3. Whether, upon being told his sunglasses would remain confiscated, Plaintiff became loud, confrontational, argumentative, and disruptive.

4. Whether as Plaintiff was walking towards an exit door, Plaintiff turned towards Defendant Elizalde and continued to be disruptive.

5. Whether Defendants Elizalde, Lindquist, and/or Davis handcuffed Plaintiff?

6. Whether at the time Plaintiff was handcuffed, he was facing the wall with his hand behind him, and Defendant Davis instructed him to calm down.   Whether Plaintiff continued to argue with officers.

7. Whether Plaintiff was confined to quarters for three days by Defendant Davis?

8. Whether Defendants Davis, Lindquist, Elizalde, Nesbitt, I. Franco, J. Franco, and/or Dill used any physical force on Plaintiff, battering him, on October 17, 2007?

9. If Defendants Davis, Lindquist, Elizalde, Nesbitt, I. Franco, J. Franco, and/or Dill used force on October 17, 2007, was the force applied in good-faith in order to maintain or restore discipline?

10. If force was used, was the force applied by Defendants Davis, Lindquist, Elizalde,

Nesbitt, I. Franco, J. Franco, and/or Dill maliciously or sadistically in order to cause Plaintiff harm?

11. If force was used, was the force used more than de minimus?

12. Whether Defendants Dill and J. Franco failed to report the battery alleged by Plaintiff?

13. Whether Plaintiff had a preexisting neck injury that was aggravated by Defendants?

14. Whether Plaintiff sustained any injuries as a result of the incident?

15. Whether Plaintiff engaged in constitutionally protected activity?

16. Whether Defendants Davis, Lindquist, and/or Elizalde took action against Plaintiff because of his constitutionally protected activity?

17. If Defendants Davis, Lindquist, and/or Elizalde took action against Plaintiff because of his constitutionally protected activity, did Defendants Davis, Lindquist, and/or Elizalde's actions advance a legitimate penological interest?

18. Are Defendants entitled to Qualified Immunity?

C.  Disputed Evidentiary Issues

Defendants anticipate a dispute regarding the admissibility of discovery responses for anything other than impeachment purposes.

D.  Special Factual Information

None applicable.

**IV.  Relief Sought**

Plaintiff seeks $100,000 in compensatory damages and $250,000 in punitive damages.

//

**V. Points of Law**

    A. Excessive Force

        The Eighth Amendment prohibits cruel and unusual punishment in the prison setting. This includes the use of excessive force. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." " Hudson v. McMillian, 503 U.S. 1, 78 (1992). "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

        "What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson, 503 U.S. at 8. "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

## B.  Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Concerning chilling, the relevant question is whether a defendant's actions would have chilled "a person of ordinary firmness from future First Amendment activities."  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).  The fact a prisoner continued to file grievances and legal actions, despite the alleged retaliation, does not require a finding that the prisoner's first Amendment rights were chilled.  Rhodes, 408 F.3d at 568.

In reviewing the last factor, the court must "afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."  Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  It is well established that the "[l]egitimate goals of a correctional institution include the preservation of internal order and discipline."  Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir.1995).  The plaintiff has the burden of proving "that there were no legitimate correctional purposes motivating the actions he complains of."  Pratt, 65 F.3d at 808.


## C.  Punitive Damages

A jury may award punitive damages under 42 U.S.C. § 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others.  Smith v. Wade, 461 U.S. 30, 56 (1983);  Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005).  However, punitive damages are not to be "awarded as of right, no matter how egregious the defendant's conduct."  Smith, 461 U.S. at 52; Engquist v. Oregon Dept. of Agriculture, 478 F.3d 985, 1003 (9th Cir. 2007).  Rather, "[t]he focus is on the character of the tortfeasor's conduct-whether it is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards."  Smith, 461 U.S. at 54.

D.  Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Pearson v. Callahan</u>, 129 S.Ct. 808, 815 (2009); <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982); <u>Rodis v. City, County of San Francisco</u>, 558 F.3d 964, 968 (9th Cir. 2009); <u>Jeffers v. Gomez</u>, 267 F.3d 895, 910 (9th Cir. 2001).  Where a constitutional violation occurs, a defendant is entitled to qualified immunity if he or she acted reasonably under the circumstances.  <u>Millender v. County of Los Angeles</u>, 564 F.3d 1143, 1148 (9th Cir. 2009).  The Supreme Court in <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), outlined a two-step approach to qualified immunity.  The first step requires the court to ask whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  <u>Saucier</u>, 533 U.S. at 201;  <u>Millender</u>, 564 F.3d at 1148. "If the answer to the first inquiry is yes, the second inquiry is whether the right was clearly established: in other words, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" <u>Millender</u>, 564 F.3d at 1148 (quoting <u>Saucier</u>, 533 U.S. at 201).  In <u>Pearson v. Callahan</u>,129 S.Ct. 808 (2009), the Supreme Court held that "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  <u>Id</u>. at 818.

"When a qualified immunity claim cannot be resolved before trial due to a factual conflict, it is a litigant's responsibility to preserve the legal issue for determination after the jury resolves the factual conflict.   A Rule 50(a) motion meets this requirement."  <u>Tortu v. Las Vegas Metropolitan Police Dept.</u>, 556 F.3d 1075, 1083 (9th Cir. 2009); <u>see also</u> <u>Norwood v. Vance</u>, 572 F.3d 626, 631 (9th Cir. 2009) (defendant may waive qualified immunity claim by failing to raise it to the district court during or immediately after trial under Rule 50).

**VI.  Abandoned Issues**

None.

# VII.  Witnesses

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(10).

## A.  Plaintiff's Witnesses

1. Plaintiff Michael L. Smith
2. Roosevelt Bronnon, Inmate
3. Cornelius Lee, Inmate
4. Work Change Porter, Inmate
5. Work Change Porter, Inmate
6. Defendant Davis, Correctional Officer, PVSP
7. Defendant Lindquist, Correctional Officer, PVSP
8. Defendant Dill, Correctional Officer, PVSP
9. Defendant J. Franco, Correctional Officer, PVSP
10. Defendant I. Franco, Cook Service Supervisor, PVSP
11. Warden Yates, Warden of PVSP
12. Ms. Nesbitt, Investigative Services Unit Secretary
13. Registered Nurse Davis, R. N. at PVSP
14. Custodian of Plaintiff's Central File
15. Custodian of Plaintiff's Medical File
16. Mr. Mouldin, Inmate PVSP

As to Plaintiff's listed incarcerated witnesses, in the Scheduling Order filed October 26, 2009, Plaintiff was informed of the procedures for calling witnesses.  Specifically, Plaintiff was informed that in order to call incarcerated person as trial witnesses, Plaintiff must serve and file with his pretrial statement a written "Motion for Attendance of Incarcerated

Witnesses." Plaintiff failed to file any such motion. Therefore, Plaintiff may not call any incarcerated witnesses due to his failure to file a timely motion for attendance of incarcerated witnesses.

### B. Defendants' Witnesses

1. B. Davis (Defendant)

2. R. Lindquist (Defendant)

3. J. Elizalde (Defendant)

4. A. Nesbitt (Defendant)

5. I. Franco (Defendant)

6. J. Franco (Defendant)

7. A. Dill (Defendant)

8. M. Davis, R.N.

9. F. Igbinosa, M.D. (Defendants' Medical Expert)

10. Custodian of Records for Plaintiff's Inmate Central File (See Section XIV(2))

11. Custodian of Records for Plaintiff's Unit Health Record

## VIII. Exhibits

The following is a list of documents or other exhibits that the parties expect to offer at trial. NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(11).

### A. Plaintiff's Exhibits

1. General Chrono dated 11-15-07

2. Inmate Work Supervisor's Time Log

3. Memorandum / Confined to Quarters

1     4.       Property Receipt, PVSP

2     5.       Operational Procedure 64 and D.O.M 33030.1 *et seq.*, - 33030.30

### B.  Defendants' Exhibits

1. Smith's November 13, 2007 complaint.

2. Smith's deposition transcript from January 27, 2009.

3. Smith's Abstract of Judgment dated May 31, 2002.

4. CDC 128-B; General Chrono dated November 15, 2007.

5. CDCR 1697; Inmate Work Supervisor's Time Log for October 2007.

6. CDCR 1697; Inmate Work Supervisor's Time Log for November 2007.

7. Property Receipt dated October 17, 2007.

8. CDC 7362; Healthcare Services Request Form dated October 18, 2007.

9. CDC XXXX; Encounter Form: Musculoskeletal dated October 23, 2007.

## IX.  Discovery Documents To Be Used At Trial (Answers To Interrogatories And Responses To Requests For Admissions)

### A.  Discovery Documents Plaintiff Intends to Use at Trial

1. Defendant I. Franco's Admissions and Interrogatories

2. Defendant Dill's Admissions, Interrogatories, and Requests for the Production of Documents

3. Defendant J. Franco's Admissions, Interrogatories, and Requests for the Production of Documents

4. Defendant Davis's Admissions, Interrogatories, and Requests for the Production of Documents

5. Defendant Elizalde's Admissions, Interrogatories, and Requests for the Production of Documents

6. Defendant Lindquist's Admissions, Interrogatories, and Requests for the Production of Documents

7. Defendants' Admissions, Interrogatories, and Requests for the Production of Documents and the Amended Response

B. Discovery Documents Defendants Intends to Use at Trial

1. Defendants may seek to introduce discovery responses if necessary.

## X.  Further Discovery or Motions

All parties intend to file motions in limine.   The procedures and time requirements for filing motions in limine are set forth below.

Even though discovery is closed, all parties are reminded of their continuing obligation to update all discovery responses previously made if that party becomes aware of new information or becomes aware that an answer in a previous response is incomplete or incorrect. Fed. R. Civ. P. 26(e)(2).

## XI.  Stipulations

Defendants are willing to stipulate to Defendants' undisputed facts.   At the telephonic trial confirmation hearing, the parties should be prepared to discuss whether they will stipulate to the facts found in the "Undisputed Facts" section of this order.   If such a stipulation is reached, the facts listed in this order as Undisputed Facts would be deemed true for trial.

Defendants are willing to stipulate to the authenticity of Plaintiff's Central File and the Medical Records maintained by the CDCR.   This stipulation would make it unnecessary for any party to call a witness for the sole purpose of authenticating documents.  At the telephonic trial confirmation hearing, the parties should be prepared to discuss whether they will stipulate to the authenticity of Plaintiff's Central File and Medical Records.

## XII.  Amendments/Dismissals

None.

**XIII.  Settlement Negotiations**

              Plaintiff believes a court ordered settlement negotiation or a settlement conference would be helpful.   Defendants do not believe that a settlement negotiation will resolve the causes of action in this action.

              The court does not require court ordered settlement conference unless all parties believe they would be beneficial.   If the parties are all interested in a court assisted settlement conference, they should contact the chambers of Magistrate Judge Gary S. Austin at 559-499-5960.

**XIV.  Agreed Statement**

              At this time, no party believes that a presentation of some or all of the evidence by agreed statement is feasible or advisable.

**XV.  Separate Trial Of Issues**

              The court will bifurcate the amount of any punitive damages award from the rest of the trial.

**XVI.  Impartial Experts - Limitation Of Experts**

              Plaintiff believes that the appointment by the court of an impartial expert would be helpful.   Defendants do not believe appointment by such an expert is advisable.

              The court can appoint an impartial expert pursuant to Rule 706 of the Federal Rules of Evidence.   The Ninth Circuit has found that Rule 706 only allows the court to appoint a neutral expert.  Students of California School for the Blind v. Honig, 736 F.2d 538, 549 (9th Cir. 1984), *reversed on other grounds by* 471 U.S. 148 (1985).   Such an expert witness may be appropriate if the evidence consists of complex scientific evidence.  McKinney v. Anderson, 924 F.2d 1500, 1511 (9th Cir. 1991).  Pursuant to Rule 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or

education, may testify thereto in the form of an opinion or otherwise." Fed.R.Evid. 702.

Given the issues in the case are excessive force and retaliation, the court does not believe an expert to assist the court or jury on scientific, technical, or other specialized knowledge will assist the court or jury.    It appears, Plaintiff may be seeking a natural expert because he is proceeding in forma pauperis and is, presumably, unable to compensate an expert witness.  The Supreme Court has declared that "the expenditure of public funds [on behalf of an indigent litigant] is proper only when authorized by Congress" United States v. MacCollom, 426 U.S. 317, 321 (1976).  The Ninth Circuit has found that the in forma pauperis statute, 28 U.S.C. § 1915, does not provide for the payment of fees or expenses for witnesses.  See Dixon v. Ylst, 990 F.2d 478, 480 (9th Cir. 1993); Tedder v. Odel, 890 F.2d 210, 211 (9th Cir. 1989).  While 28 U.S.C. 1915 provides for service to an indigent litigant witnesses, it does not waive payment of fees or expenses for those witnesses.  Hadsell v. C.I.R., 107 F.3d 750, 752 (9th Cir. 1997).  The court has reviewed the in forma pauperis statute and finds, as with other witnesses, the in forma pauperis statute does not authorize the expenditure of public funds for the appointment of an expert witness.  See 28 U.S.C. § 1915.  See Jimenez v. Sambrano,  2009 WL 653877 (S.D.Cal. 2009); Trimble v. City of Phoenix Police Dept., 2006 WL 778697 (D.Ariz. 2006).

**XVII.  Attorneys' Fees**

No party may obtain attorney's fees in this action.

**XVIII.  Further Trial Preparation**

A.  Telephonic Trial Confirmation Hearing

A telephonic trial confirmation hearing is set for February 22, 2010 at 3:00 p.m. Counsel for Defendants is directed to arrange for telephone contact with Plaintiff, and shall initiate the call to (559) 499-5669.  At the telephonic hearing, the court will address any pretrial matter raised by the parties.

B.  Motions In Limine Hearing and Briefing Schedule

Any party may file a motion in limine.  The purpose of a motion in limine is to establish in advance of the trial that certain evidence should not be offered at trial.  Although the Federal Rules do not explicitly provide for the filing of motions in limine, the court has the inherent power to hear and decide such motions as a function of its duty to expeditiously manage trials by eliminating evidence that is clearly inadmissible for any purpose.  Luce v. United States, 469 U.S. 38, 41 n. 4 (1984); Jonasson v. Lutheran Child and Family Services, 115 F. 3d 436, 440 (7th Cir. 1997).  The court will grant a motion in limine, and thereby bar use of the evidence in question, only if the moving party establishes that the evidence clearly is not admissible for any valid purpose.  Id.; Hawthorne Partners v. AT & T Technologies, Inc., 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).

All motions in limine must be served on the other party or parties, and filed with the court, by March 8, 2010. Any motion in limine must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial.

Any opposition to a motion in limine must be served on the other party or parties, and filed with the court, by March 15, 2010.

If any party files a motion in limine, the court will hear and decide such motions on the morning of trial at 8:30 a.m.

Whether or not a party files a motion in limine, that party may still object to the introduction of evidence during the trial.


C.  Duty of Counsel to Pre-Mark Exhibits

The parties are ordered to confer no later than February 25, 2010 for purposes of pre-marking and examining each other's exhibits.  All joint exhibits must be pre-marked with numbers preceded by the designation JT/-- (e.g., JT/1, JT/2).  All of Plaintiff's exhibits shall be pre-marked with numbers.  All of Defendants' exhibits shall be pre-marked with letters.

1.    Counsel shall create four (4) complete, legible sets of exhibits in binders as
        follows:

1   (a) Two sets of binders to be delivered to Courtroom Clerk Harold Nazaroff

2      by March 18, 2010, one for use by the Courtroom Clerk and the other for

3      the court; and

4   (b) One set for each counsel's own use.

5      If the parties desire, they may have a fifth set of binders to be used for the

6      purposes of questioning witnesses.

7 2. Counsel are to confer and make the following determination with respect to each

8   proposed exhibit to be introduced into evidence, and to prepare separate indexes -

9   one listing joint exhibits, and one listing each party's separate exhibits:

10   (a) Duplicate exhibits, i.e., documents which both sides desire to introduce

11      into evidence, shall be marked as a joint exhibit, and numbered as directed

12      above.  Joint exhibits shall be listed on a separate index, and shall be

13      admitted into evidence on the motion of any party, without further

14      foundation.

15   (b) As to exhibits that are not jointly offered, and to which there is no

16      objection to introduction, those exhibits will likewise be appropriately

17      marked, e.g., Plaintiffs' Exhibit 1 or Defendants' Exhibit A, and shall  be

18      listed in the offering party's index in a column entitled "Admitted In

19      Evidence."  Such exhibits will be admitted upon introduction and motion

20      of the party, without further foundation.

21   (c) Those exhibits to which the only objection is a lack of foundation shall be

22      marked appropriately, e.g., Plaintiffs' Exhibit 2 - For Identification, or

23      Defendants' Exhibit B - For Identification, and indexed in a column

24      entitled "Objection Foundation."

25   (d) Remaining exhibits as to which there are objections to admissibility not

26      solely based on a lack of foundation shall likewise be marked

27      appropriately, e.g., Plaintiffs' Exhibit 3 - For Identification or Defendants'

28      Exhibit C - For Identification, and indexed in a third column entitled

"Other Objection" on the offering party's index.

3.    Each separate index shall consist of the exhibit number or letter, a brief description of the exhibit, and the three columns outlined above, as demonstrated in the example below:

INDEX OF EXHIBITS

| EXHIBIT # | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OTHER OBJECTION |
|-----------|-------------|----------------------|----------------------|-----------------|

Two sets of the completed joint index and the separate indexes shall be delivered to the Courtroom Clerk with the two sets of binders.

The court has no objection to counsel using copies.  However, the copies must be legible.  If any document is offered into evidence that is partially illegible, the court may sua sponte exclude it from evidence.

D.  Discovery Documents

By March 18, 2010, each party shall file a list of all discovery documents the party intends to use at trial.  The list shall indicate whether each discovery document has previously been lodged with the Clerk.  If the discovery document has not been previously lodged, the party shall so lodge the document with the Courtroom Clerk by March 18, 2010.

E.  Trial Briefs

The parties are directed to file and serve a Trial Brief by February 17, 2010.  Local Rule 16-285.  The parties need not include in the Trial Brief any issue that is adequately addressed in a motion in limine, or in an opposition brief to a motion in limine.

F.  Voir Dire

The parties shall file and serve proposed voir dire questions, if any, by 4:00 p.m. on March 18, 2010.   Co-Defendants may file joint proposed voir dire questions. Further, in order to aid the court in the proper voir dire examination of the prospective jurors,

counsel should lodge with the court on the first morning of trial a list of all prospective witnesses, including rebuttal witnesses, that counsel reasonably expect to call.  The purpose of the lists is to advise the prospective jurors of possible witnesses to determine if a prospective juror is familiar with any potential witness.

### G.  Agreed Summary Of The Case

The parties shall lodge with the Courtroom Clerk a joint agreed summary of the case, briefly outlining the positions of the parties by 4:00 p.m. on March 18, 2010.  The summary will be read to the jury panel at the outset of the trial solely for the purposes of assisting in the jury selection process.  The contents of the summary shall not be deemed to be evidence or an admission or stipulation by a party as to any contested fact or issue.

### H.  Proposed Jury Instructions

The parties shall file and serve proposed jury instructions by 4:00 p.m. on March 18, 2010, along with a copy of the instructions on a 3-1/2 inch computer disc, preferably formatted for WordPerfect 10.   Instead of a computer disc, electronic fillers shall attach a copy of their proposed jury instructions to an e-mail, which the party shall send to awiorders@caed.uscourts.gov.

All proposed jury instructions shall be in duplicate.  One set shall indicate the party proposing the instruction, with each instruction numbered or lettered, shall cite supporting authority, and shall include the customary "Given, Given as Modified, or Refused," showing the court's action with regard to each instruction.  The other set shall be an exact copy of the first set, but shall be a "clean" copy that does not contain the identification of the offering party, instruction number or letter, supporting authority, or reference to the court's disposition of the proposed instruction.

The parties are ordered to confer after the trial confirmation hearing to determine which instructions they agree should be given.  As soon as possible thereafter, the parties shall submit a list of joint, unopposed instructions.  As to those instructions to which the parties

dispute, the court will conduct its jury instruction conference during trial at a convenient time.

I.  Proposed Verdict Form

The parties shall file and serve a proposed verdict form by 4:00 p.m. on March 18, 2010

J.  Use Of Videotape and Computers

Any party wishing to use a videotape for any purpose during trial shall lodge a copy of the videotape with the Courtroom Clerk by 4:00 p.m. on  March 18, 2010 .  If a written transcript of audible words on the tape is available, the court requests that the transcript be lodged with the court, solely for the aid of the court.

If counsel intends to use a laptop computer for presentation of evidence, they shall contact the courtroom deputy clerk at least one week prior to trial.  The courtroom deputy clerk will then arrange a time for counsel to bring the laptop to the courtroom, and meet with a representative of the Information and Technology Department and receive a brief training session on how counsel's equipment interacts with the court's audio/visual equipment.  If counsel intends to use PowerPoint, the resolution should be set no higher than 1024 x 768 when preparing the presentation.

K.  Morning Conferences During Trial

During the trial, it is the obligation of counsel to meet with the court each morning to advise the court and opposing counsel as to what documents are proposed to be put into evidence that have not previously been admitted by stipulation, court order, or otherwise ruled upon.  The court will rule on those documents, to the extent possible, prior to the commencement of trial each day out of the presence of the jury.  If the ruling depends upon the receipt of testimony, the court will rule as requested upon the receipt of such testimony.

The court shall consider any other legal matter at morning conferences as well. The court does not wish to recess the trial to hear legal argument outside of the presence of the

jury, and proper preparation by counsel will eliminate the need for that result.

L.  Order Of Witnesses

In order to make the trial operate efficiently and smoothly, each counsel has the continuing obligation to advise opposing counsel as to what witnesses he or she intends to call at each trial session.

**XIX.  Objections to Pretrial Order**

Any party may, within ten (10) calendar days after the date of service of this Order, file and serve written objections to any of the provisions of this Order.  Such objections shall specify the requested modifications, corrections, additions or deletions.

**XX.  Miscellaneous Matters**

Defendants state that special handling of Smith's CDCR central file may be appropriate as to any confidential sections where disclosure may compromise the safety and security of the institution, staff or other inmates. Special handling of Smith's medical records may be appropriate in order to maintain Smith's health privacy rights.

**XX.  Rules of Conduct During Trial**

A.  General Rules

1.      All participants in the trial shall conduct themselves in a civil manner.  There shall be no hostile interchanges between any of the participants.

2.      All oral presentations shall be made from the podium, unless otherwise permitted by the court.

3.      Sidebar conferences are discouraged.  Legal arguments or discussion of issues outside the presence of the jury should be done during recesses.

4.      Counsel shall advise their respective clients and witnesses not to discuss any aspect of the case in the common areas of the courthouse accessible to

the jurors, such as the lobby, the elevators, the hallways and the cafeteria.

## B.  Jury Selection

1.  The court will conduct voir dire to be supplemented by any written questions submitted by counsel prior to trial and after the court has concluded its questioning of the jury panel.  In some circumstances, the court may allow brief direct questioning by counsel.

## C.  Opening Statements

1.  Counsel may use visual aids in presenting the opening statement.  However, any proposed visual aids shall be shown to opposing counsel before opening statement.

## D.  Case in Chief

1.  Counsel shall have his/her witnesses readily available to testify so that there are no delays in the presentation of evidence to the trier of fact.

2.  At the close of each trial day, counsel shall disclose his/her anticipated witnesses and order of presentation for the next day, so that any scheduling or evidentiary issues may be raised at that time.

## E.  Witnesses

1.  Before approaching a witness, counsel shall secure leave of court to approach the witness.

2.  Before approaching a witness with a writing, counsel shall first show the writing to opposing counsel.

## F.  Exhibits

1.  All exhibits shall be marked and identified in accordance with the

instructions in the Pretrial Order.

2.      An exhibit shall not be published to the jury until it has been admitted into evidence and counsel has secured leave of court to publish the exhibit.

3.      The court usually will conduct an on the record review of the exhibits that have been admitted in evidence at the conclusion of each party's case in chief and after each party has rested its entire case.


### G.  Objections

1.      No speaking objections or arguments are permitted in the presence of the jury.  Counsel shall state the specific legal ground(s) for the objection, and the court will rule based upon the ground(s) stated.  The court will permit counsel to argue the matter at the next recess.

2.      The court will not assume that any objection made also implies with it a motion to strike an answer that has been given.  Therefore, counsel who has made an objection, and who also wishes to have an answer stricken, shall also specifically move to strike the answer.


### H.  Closing Argument

1.      Counsel may use visual aids in presenting the closing argument.  However, any proposed visual aids shall be shown to opposing counsel before closing argument.

FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR THE IMPOSITION OF SANCTIONS, INCLUDING POSSIBLE DISMISSAL OF THIS ACTION OR ENTRY OF DEFAULT, ON ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY WHO CAUSES NON-COMPLIANCE WITH THIS ORDER.

IT IS SO ORDERED.

**Dated:  February 16, 2010**      **/s/ Anthony W. Ishii**

                              CHIEF UNITED STATES DISTRICT JUDGE